Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3933 | **DATE** | 9/25/2001 |
| **CASE TITLE** | Vanita Kaye Driver vs. Arbor Management, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted in its entirety and this action is dismissed with prejudice.(16-1)
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 6 2001 | 18 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/25/2001 date mailed notice | |
| SN | | courtroom deputy's initials | SN mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 2 6 2001

| | | |
|---|---|---|
| VANITA KAYE DRIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00 C 3933 |
| | ) | |
| ARBOR MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Vanita Kaye Driver ("Driver") has charged her former employer Arbor Management ("Arbor") with race-based employment discrimination, retaliation and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII," 42 U.S.C. §§2000e to 2000e-17). In her EEOC Charge of Discrimination, attached to and made a part of her Complaint of Employment Discrimination, Driver (who is African-American) has alleged that Arbor discriminated against her by (1) treating her differently from similarly-situated Caucasian employees, (2) transferring and demoting her in retaliation for her complaints about her treatment and (3) creating hostile working conditions that eventually forced her to resign her position.[1]

---

[1] Driver's Complaint, which used the form provided by this District Court Clerk's Office for litigants without lawyers, had also checked the box for a claim of age discrimination. This Court then appointed counsel to represent Driver pro bono publico, and she has had the benefit of his representation throughout. Driver has since stipulated to withdrawing the age discrimination claim during her deposition (Dep. 26), and it is therefore dismissed.

18

Arbor has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, complying with this District Court's LR 56.1 by providing a Statement of Material Facts.[2] Driver then failed to respond to Arbor's Rule 56 motion or to file the required LR 56.1(b) response by the September 5, 2001 due date set by this Court--and that failure has continued despite several followup efforts by this Court's staff. Under LR 56.1(b)(3)(B), "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Because Driver failed to comply with the requirements of LR 56.1(b), she is thus deemed to have admitted the material facts in Arbor's statement.[3]

For the reasons stated in this memorandum opinion and order, Arbor's motion for summary judgment is granted in its entirety. This action is therefore dismissed.

---

[2] LR 56.1(a) and (b) are designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to Arbor's LR 56.1(a) statement as "A. St. ¶--."

[3] Myriad Seventh Circuit opinions support the authority of a district court to enforce the strictures of LR 56.1 to the letter--see, e.g., Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 870-71 (7th Cir. 2000) and cases cited there. Because any additional information contained in Driver's deposition (cited simply "Dep.--") does not force an unwarranted and burdensome judicial hunt through the record, this Court has taken that testimony into account in the interest of not unduly penalizing Driver for her lawyer's failure to have filed a timely response.

Summary Judgment Standards

Familiar Rule 56 principles impose on Arbor the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). For that purpose, this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (St. Louis N. Joint Venture v. P & L Enters., Inc., 116 F. 3d 262, 265 n.2 (7th Cir. 1997)). As Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999) has more recently quoted from Roger v. Yellow Freight Sys., Inc., 21 F.3d 146, 149 (7th Cir. 1994)):

> A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.

Even though intent is inevitably the issue in employment discrimination cases (see, e.g., Miller v. Borden, 168 F.3d 308, 312 (7th Cir. 1999)), that does not negate the potential for summary judgment in cases where a movant plainly satisfies the Rule 56 standards (id.). In those terms summary judgment is appropriate if the record reveals that no reasonable jury could find in favor of Driver (see Fuka v. Thomson Consumer Elec., 82 F.3d 1397, 1402 (7th Cir. 1996) and cases cited there).[4]

---

[4] Alexander v. Wisconsin Dep't of Health and Family Servs., No. 00-2603, 2001 WL 965938, at *5 (7th Cir. Aug 27) has recently taken the occasion to stress that despite our Court of Appeals' regular inclusion (more than 30 times!) of the phrase "added rigor" in its opinions to describe the level of judicial scrutiny

3

Because Driver is deemed to have admitted the facts contained in Arbor's LR 56.1(a) statement, this opinion will consider those facts when determining whether a genuine issue of material fact exists. All reasonable inferences from those facts are nevertheless drawn in favor of nonmovant Driver (see, e.g., Smith v. Severn, 129 F.3d 419, 425-26 (7th Cir. 1997)).

## Facts

Arbor provides meal services to schools and institutions (A. St. ¶2). At all times relevant to this action, Arbor had a contract to service the schools in Illinois School District 149 ("District 149") (A. St. ¶4). In each school that it services, Arbor assigns at least one employee to act as "Lead Tech"--and when the size of the school makes it difficult for one person to perform the job, two employees are assigned as "Co-Leads" (A. St. ¶13).

Lead Techs are responsible both for serving meals at lunch time and for managing administrative issues involving the meal service, which include taking lunch orders from each classroom, submitting those orders to the central kitchen that prepares food for all of the schools in the district, receiving the food items, collecting and reporting money and lunch tickets and assisting

---

involved, motions for summary judgment on claims involving employment discrimination are actually reviewed under the same standard as any other type of claim. That of course marks the death knell for the phrase, though it has never been too clear what it added to the corpus juris to begin with.

with lunch set-up and clean-up (A. St. ¶15). Other Arbor employees assigned to the schools are not responsible for any of those administrative matters (A. St. ¶16). Arbor employees are routinely transferred between school sites in District 149 as staffing needs require (A. St. ¶14).

Arbor has a four-step progressive discipline policy for its employees. That policy calls for an oral warning upon the first violation of Arbor's rules, a written warning for the second violation, suspension for the third violation and termination thereafter (A. St. ¶17).

In September 1996 Marcia Cross ("Cross"), an Arbor Food Service Manager, got in touch with Driver about an opening with the company (A. St. ¶¶5, 19). Cross interviewed and hired Driver, assigning her to work at Caroline Sibley School ("Sibley") in Calumet, Illinois (A. St. ¶¶20-21). Initially Driver worked with Lisa Percak ("Percak"), the Lead Tech at Sibley, who was then pregnant and anticipated leaving Arbor shortly (A. St. ¶18). Upon Percak's departure in October 1996, Driver became the Lead Tech at Sibley (A. St. ¶21).

Between October 1996 and October 1998 Cross transferred at least four employees from Sibley to other facilities because of problems those employees had working with Driver (A. St. ¶22). In 1998 Driver briefly quit her job over a dispute with coworkers, but Cross persuaded Driver to return to work (A. St.

5

¶24). In October 1999 and January 2000 Driver was involved in verbal altercations with a co-worker (A. St. ¶¶26, 30). During the same time period Sibley experienced ongoing problems with products that had been delivered from the central kitchen being lost or stolen (A. St. ¶32). As a result Cross threatened to transfer all Arbor employees at Sibley to different locations (A. St. ¶33).

In the meantime the Lead Tech at another District 149 school, Diekman, was having a difficult time managing all of the administrative duties on her own (A. St. ¶36). On February 3, 2000 Cross told Driver that effective February 7 she would be transferred to Diekman to work as Co-Lead (A. St. ¶37). At Diekman Driver was to split the administrative responsibilities with her Co-Lead, although at lunch times the Co-Lead (who had more seniority with Arbor) would collect lunch tickets while Driver served food (A. St. ¶46).

Cross instructed Driver to leave her keys to Sibley with the school secretary. Driver did that on February 4, although she also removed various administrative materials from Sibley and took them to her home (A. St. ¶¶37, 40). Driver had never complained to any Arbor employee of any discriminatory treatment before her transfer to Diekman (A. St. ¶56).

On February 7 Driver called Cross to complain that some of the procedures used at Diekman were different from those at

6

Sibley (A. St. ¶41). Cross handed the phone to her supervisor, B.J. Struchill ("Struchill"), who administered an oral warning under Arbor's discipline policy (A. St. ¶¶41-42). After speaking with Struchill, Driver told her Co-Lead that she was quitting and left the building (A. St. ¶43). Driver then spoke with a different Arbor supervisor, Elizabeth Williams ("Williams"), who convinced Driver to return to work (A. St. ¶44).

On February 8 Cross spoke with Driver about the administrative materials that were missing from Sibley and asked Driver whether she had been giving free meals to the Sibley principal in contravention of School District policy, a question that Driver refused to answer (A. St. ¶¶47, 50). That same day Cross issued a written warning to Driver for failing to return the administrative materials and refusing to answer the question about the free meals (A. St. ¶48). Cross then confirmed with the Sibley principal that Driver had indeed been giving him free meals, and on February 10 Driver was given a disciplinary notice suspending her for three days for providing those free lunches (A. St. ¶52-53). Driver then quit for the third and final time (A. St. ¶54). During Driver's employment at Arbor, no Arbor employee had ever made any comments to her about her race (A. St. ¶57).

Driver filed charges of race and age discrimination and retaliation with Equal Employment Opportunity Commission ("EEOC")

on February 16, 2000. After she received a right to sue letter, she timely filed this action on June 28, 2001.[5]

Disparate Treatment

Driver's Charge of Discrimination says that Arbor subjected her to disparate treatment in the course of her employment because of her race. More specifically she asserts:

1. She was not provided with an assistant at Sibley, while Caucasian Lead Techs at other schools were.

2. Unlike Caucasian Lead Techs, she was subjected to verbal abuse and false accusations by Cross.

3. She was required to fill in for other employees who failed to report for work without receiving any additional compensation, while Caucasian Lead Techs were either provided with substitute workers or given additional compensation for completing additional work.

At this summary judgment stage Driver may show[6] discrimina-

---

[5] Driver's pro se Complaint said that she had received the right-to-sue letter on March 28, 2000 (the date of the letter itself). If that were so, her Complaint would have missed the 90 day filing deadline by one day, a defense raised by Arbor in its response to Driver's Complaint. As this Court noted in its October 3, 2000 memorandum, it seems likely that Driver erred in listing March 28, 2000 as the date of receipt and that the letter was in fact received on March 29. Arbor later withdrew that defense.

[6] At this summary judgment stage, of course, Driver need not "show" or "establish" or "prove" anything. Instead she must merely demonstrate the existence of a genuine issue of material (that is, outcome-determinative) fact to defeat Arbor's summary judgment motion. Although this opinion will nonetheless often

8

tion either directly (through direct or circumstantial evidence or both) or via the indirect McDonnell Douglas burden-shifting method (Jackson v. E.J. Brach Corp., 176 F.3d 971, 982 (7th Cir. 1999). Either way, Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir. 1996)(per curiam) has framed the plaintiff's burden in every employment discrimination case in straightforward fashion:

> The central question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different race (age, sex, religion, national origin, etc.) and everything else has remained the same.

That reflects the simple tautology (a tautology as true at the Rule 56 stage as at trial) that anyone who claims to have suffered disparate treatment as an African-American (as Driver does here) must create a legitimate factual issue as to whether the employer took the adverse employment action because the employee was African-American.

Here, while Driver's Complaint alleges discriminatory treatment, there is simply no record evidence to suggest that racial animus was at work in any of the treatment that she received from Arbor. During her employment no Arbor employee commented to Driver about her race. Driver provides no

---

employ one of those quoted terms because that terminology is used by the cited cases, this Court has consistently imposed that lesser burden on Driver in testing her claims.

9

circumstantial evidence even suggesting that Cross or any other Arbor employee treated her differently because of her race. For example, when asked in her deposition about other Lead Techs who had received additional compensation for doing additional work, Driver named three employees as examples, two of whom were African-American (Dep. 155-56).

Rather than Cross and other Arbor employees being motivated by racial animus, the evidence shows that they worked reasonably with Driver to deal with the problems that she had in getting along with her co-workers and with her tendency to quit her job whenever the going got rough. Driver's disparate treatment claim is therefore dismissed.

## Retaliation

Driver alleges that Arbor unlawfully retaliated against her by demoting her via a transfer to Diekman. In the absence of any direct evidence of retaliatory motive, retaliation claims under Title VII follow the same <u>McDonnell Douglas</u> approach as discrimination claims. For summary judgment purposes, Driver must present a prima facie case showing (1) statutorily protected expression, (2) an adverse action by the employer and (3) a causal link between the protected expression and the adverse action (<u>McClendon v. Indiana Sugars, Inc.</u>, 108 F.3d 789, 796 (7th Cir. 1996) and cases cited there).

Driver has failed to present such a prima facie case. To

begin with, though this opinion is not predicated on a deficiency in that first element, it is worth observing that it is at best unclear whether Driver even engaged in any protected expression during her employment at Arbor. In her interrogatory responses, Driver denied that she ever complained to Arbor of any discriminatory treatment (A. St. ¶56). And Driver filed her EEOC complaint on February 16, 2000, <u>after</u> she had already resigned from her position with Arbor.

Indeed, Driver's deposition contains the only hint of any protected expression. There she mentions two conversations she has with another Lead Tech, as well as one conversation with Williams that occurred after her transfer to Diekman (Dep. 30-33, 187-88). In each of those conversations Driver expressed her belief that Cross was discriminating against her.

But that is the least of Driver's problems. Even if those conversations, construed in the light most favorable to Driver, were to be deemed protected expression, and even if this Court were to accept Driver's characterization of her lateral transfer to Diekman as a "demotion," Driver would still fail to meet the third element of the prima facie case. There is simply no evidence of the requisite causal link between the transfer and anything that Driver said, for the Lead Tech to whom Driver spoke played no role in the decision to transfer Driver to Diekman and there has been no suggestion that the Lead Tech shared

11

information about their conversations with the decisionmakers. Furthermore, because Driver's conversation with Williams occurred <u>after</u> her transfer to Diekman, it can be of no help to her retaliation claim.

In sum, the retaliation claim is also a loser. It too is dismissed.

## Constructive Discharge Claim

Driver alleges in her Charge of Discrimination that she was subjected to "hostile working conditions...[that] were severe, pervasive and egregious, and beyond what a reasonable person would be expected to tolerate," and that caused her physical illness and ultimately forced her to resign. While Driver does not characterize her claim as such, that essentially equates to a claim of constructive discharge.

Constructive discharge occurs when an employee is forced to resign because her working conditions, viewed from the standpoint of a reasonable employee, have become unbearable (<u>Grube v. Lau Indus., Inc.</u>, 257 F.3d 723, 728 (7th Cir. 2001)). <u>Simpson v. Borg-Warner Auto., Inc.</u>, 196 F.3d 873, 877 (7th Cir. 1999) (internal citations and quotation marks omitted) sets forth the two-step process for making such a determination:

> First, a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign. Second, the conditions must be intolerable because of unlawful discrimination.

12

Proof of constructive discharge is a high hurdle for a plaintiff to overcome, because ordinarily employees are expected to remain at work while seeking redress (Tutman v. WBBM-TV, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000)). Thus constructive discharge has been found only in egregious cases, usually involving threatened or actual physical violence, while in contrast "a range of unpleasant and even embarrassing employer actions" have been found "tolerable and therefore insufficient to effect a constructive discharge" (Simpson, 196 F.3d at 877).

Here Driver's vague allegations of hostile environment[7] and resulting illness[8] fall far short of what is required to prove constructive discharge. That final claim is also dismissed.

## Conclusion

Because there is no genuine issue of material fact in this case, and because there is simply no evidence on which a reasonable jury could find for Driver on any of her claims of disparate treatment, retaliation and constructive discharge, Arbor is entitled to a judgment as a matter of law. Its Rule 56

---

[7] That seems to refer to Driver's various encounters with Cross and other Arbor employees, although Driver has failed to provide any specifics to support such a claim.

[8] As for Driver's illness claim, the only arguable support is in Driver's deposition statements that she experienced vomiting following a meeting she had with Cross and Struchill in November 1999 and that three days later she visited her doctor, who diagnosed her as having slightly elevated blood pressure (Dep. 60, 207-08).

13

motion is granted, and this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date:   September 25, 2001

Separator Page for Case Number 1:00-cv-05133
Document Number: 26
Docketed By: eb







Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5133 | **DATE** | 9/25/2001 |
| **CASE TITLE** | Clark vs. Danzig | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   The minute order of September 24, 2001 is corrected to reflect that the amended complaint is due on or before October 30, 2001. The client's face to face settlement conference is to take place on or before November 13, 2001. Status hearing set for November 14, 2001 at 9:30a.m.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 6 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 26 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | | 01 SEP 25 PM 4:52 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Separator Page for Case Number 1:00-cv-05923
Document Number: 51
Docketed By: eb







*Minute Order Form (06/97)*

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | Springmann |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5923 | **DATE** | 9/21/2001 |
| **CASE TITLE** | Ragain vs. First Midwest Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Settlement conference held.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices
SEP 2 6 2001
date docketed
docketing deputy initials
51

9/24/2001
date mailed notice

courtroom deputy's initials: GL
mailing deputy initials: GL

Date/time received in central Clerk's Office

01 SEP 25 AM 8:32

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | |
|---|---|
| KHRISTII ZELASKO REGAIN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CAUSE NO.: 00-CV-5923 |
| FIRST MIDWEST BANK, | ) ) ) |
| Defendant. | ) |

**DOCKETED SEP 26 2001**

### SETTLEMENT CONFERENCE MINUTES/MEMORANDUM
Conducted on September 21, 2001

HONORABLE THERESA L. SPRINGMANN, Magistrate Judge

Plaintiff Khristii Zelasko Regain appeared in person and by Attorneys Laurie Marie Burgess and Ronald Barry Schwartz. Defendant, appeared by Keith A. Dorman and by Philip Glotfelty, Senior Vice President/Human Resources Director of First Midwest Bank and by Trudy Haas, Claims Examiner for Chubb Group of Insurance Companies.

The parties undertake settlement negotiations in good faith but without success at this time. It is expected that the Honorable Rudy Lozano will be scheduling this matter for conference with parties' counsel in the immediate future.

The parties are requested to immediately notify the Chambers of the Magistrate Judge upon receipt and review of this Minute Entry of any corrections or additions needed to accurately reflect the proceedings at the settlement conference on any relevant substantive matters agreed to or discussed.

MAGISTRATE JUDGE SPRINGMANN
UNITED STATES DISTRICT COURT

cc: All counsel of record

51